

FILED

17 AUG 25 PM 2: 49

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRIS DALE PAUL, | Case No.: 16cv1479-WQH(KSC) |
| Plaintiff, | **REPORT AND RECOMMENDA-TION RE CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendants. | **[Doc. Nos. 17 and 19.]** |

Pursuant to Title 42, United States Code, Section 405(g), of the Social Security Act ("SSA"), plaintiff filed a Complaint to obtain judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying him disability benefits.[1] [Doc. No. 1.]

---

[1] Title 42, United States Code, Section 405(g), provides as follows: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . brought in the district court of the United States. . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

1

1    Presently before the Court are: (1) plaintiff's Motion for Summary Judgment [Doc.
2    No. 17]; (2) defendant's Cross-Motion for Summary Judgment and Opposition to
3    plaintiff's Motion for Summary Judgment [Doc. Nos. 19-20]; and (3) the Administrative
4    Record ("AR") [Doc. No. 10]. Plaintiff did not file a reply. In his Motion for Summary
5    Judgment, plaintiff argues that his case should either be reversed and remanded for
6    further proceedings or reversed with instructions for the payment of benefits. [Doc. No.
7    17-1, at pp. 3-11.] Plaintiff challenges the decision denying his claim for disability
8    benefits under the SSA, because he contends the decision relies on incomplete testimony
9    by a vocational expert which resulted in a technical error that materially affected the
10   disability analysis. Otherwise, plaintiff does not challenge the evidentiary basis for the
11   denial of his claim for benefits. Therefore, this Report and Recommendation only
12   includes factual background necessary to explain the Court's analysis and does not
13   include a detailed summary of the medical evidence in the Administrative Record.

14       After careful consideration of the moving and opposing papers, as well as the
15   Administrative Record and the applicable law, it is RECOMMENDED that the District
16   Court GRANT plaintiff's Motion for Summary Judgment (Doc. No. 17); DENY
17   defendant's Cross-Motion for Summary Judgment (Doc. No. 19); remand the case for
18   further administrative proceedings; and enter judgment in plaintiff's favor.

19   *I.*   ***Background and Procedural History***.

20       On February 23, 2012, plaintiff filed an application for disability insurance benefits
21   under Title II of the Social Security Act and for supplemental security income benefits
22   under Title XVI of the Act, alleging he became disabled beginning August 1, 2006.[2] [AR
23
24
25   [2]    Title II disability insurance benefits are different from Title XVI security income
26   benefits. "Title II . . . provides for disability insurance for covered wage earners." *Penny*
     *v. Sullivan*, 2 F.3d 953, 955 (9th Cir. 1993). To qualify for benefits under Title II, a
27   claimant must have sufficient earnings from covered employment. *See* 42 U.S.C.
     § 423(a), (c). "Eligibility for Title XVI [supplemental security income] benefits is based
28   on economic need." *Penny v. Sullivan*, 2 F.3d at 955. "The definition of disability is

227-244]. At the time of his application, plaintiff reported that he was unable to work because of Hepatitis C; left arm and shoulder pain; and right leg pain. [AR 264.] Plaintiff's job history included work as a construction laborer from 1998 through 2006 and as a heavy equipment operator in 2002. [AR 265.]

On November 26, 2012, plaintiff's claim for Title II disability benefits was denied because it was determined based on the medical records submitted in support of the claim that plaintiff's condition was not disabling on any date through December 11, 2011, the date he was last insured. [AR 131.] Plaintiff's claim for Title XVI supplemental security income benefits was denied, because it was determined that his physical impairments were not severe enough to be considered disabling. [AR 132.] On January 17, 2013, plaintiff requested reconsideration, but his request was denied on July 2, 2013. [AR 142-145.] On July 23, 2013, plaintiff requested a hearing before an Administrative Law Judge (ALJ). [AR 151-152.]

A hearing before an ALJ was held on November 18, 2014, and the ALJ heard testimony from plaintiff, a medical expert, and a vocational expert. [AR 30-56.] Plaintiff was represented at the hearing by an attorney. [AR 30.]

Based on a review of plaintiff's medical records, the medical expert, Robert C. Thompson, M.D., testified at the hearing that there was evidence of a "remote injury to the right wrist in 1995 with open reduction and internal fixation done in 2006" but "showing a normal range of motion and function during the period of interest. . . ." [AR 32.] The medical expert also testified the medical records indicated plaintiff complained of left shoulder pain, but he had a "full range of motion and function" and "normal

_____

virtually identical for [supplemental security income] consideration as it is for Title II disability insurance benefits." *Id.* Many claimants apply for both. *Id.* In this case, plaintiff later withdrew his claim for Title II disability insurance benefits, because he recognized that he did not meet the disability requirements as of his "date last insured." [AR 30-31, 56.] However, he continued to pursue his claim for Title XVI benefits. [AR 12, 31, 56.]

3

imaging." [AR 32-33.] In plaintiff's cervical spine, the medical expert testified there was evidence of "mild degenerative changes with foraminal narrowing at C5-6 on the left only" and "mild arthritis in the facet." [AR 33.] There were also "complaints of low back pain with normal range of motion and neurological exam." [AR 33.] In addition, the medical expert testified there was evidence that plaintiff had a "remote right lower extremity injury and some chronic deformity" but a neurological examination was "normal."[3] [AR 33.] Finally, the medical expert said he found evidence of "hernia repairs, a prior stab wound injury, positive tests for hepatitis C and also marijuana use." [AR 34.]

In the medical expert's opinion, plaintiff had some functional limitations in that he could: (1) frequently lift 10 pounds and occasionally lift 11 to 20 pounds; (2) sit for two hours at a time; (3) stand and walk for one hour at a time; (4) sit for six hours and stand and walk for four hours in an 8-hour day; (5) use his left hand frequently with only occasional pushing, pulling, and reaching overhead; (6) occasionally use stairs and ramps; (7) occasionally kneel and crouch but never crawl; (8) avoid exposure to unprotected heights or moving mechanical parts in view of some of the uncertainty of function of the knee which was fairly severely injured in the past." [AR 33-34.] In response to questioning by plaintiff's counsel, the medical expert indicated he was not able to adequately evaluate or quantify any effects of "chronic pain." [AR 35-36.]

Plaintiff testified that he stopped working in 2006 because of pain in both of his legs after being run over by "a furniture truck." [AR 39.] In January 2014, plaintiff said he had been injured when he was hit by a car while riding a bike. The injury resulted in a cellulitis infection in his leg that kept re-occurring, so he had been in an out of the hospital several times. [AR 38, 40, 43-44, 48.] He also said he had been taking several

---

[3]     Plaintiff's medical history states that in 1996 he suffered trauma in his right lower extremity "with rod placement and multiple skin grafts after girlfriend ran over his leg with the car." [AR 355.]

4

different types of pain medications with no side effects. [AR 40-41.] When he does not have any pain medication, he uses whatever he can get to dull the pain, including marijuana, and he has a certificate for medical use of marijuana. [AR 43, 51.] In response to questions by his attorney, plaintiff testified he has limited use of his hands because of injuries. [AR 47-48.] He also said he has cramping and pain in his abdomen because of a stab wound, and he has consistent pain in his lower back that affects his sleep. [AR 49-50.] In addition, plaintiff explained that he slouches while sitting because it is more comfortable for his back. Although he said he could sit for six hours, he indicated he would have to slouch (*i.e.*, sit almost in a reclining position) and move around to address the pain in his back. [AR 51-52.]

Based on a review of the record, the vocational expert testified plaintiff previously worked as a heavy equipment operator, which is considered medium level, skilled work; and as a construction laborer, which is considered heavy, unskilled work. [AR 52-53.] In response to hypotheticals presented by the ALJ, the vocational expert indicated that plaintiff would be unable to return to either of his past jobs but there were other light jobs he could do, such as "table worker" and "final assembler," both of which are considered "light" work. [AR 53-54.] However, the vocational expert indicated there would be no jobs available to plaintiff if he was "off task at least 20 percent of the day" because of pain or if he had to sit in a reclining position. [AR 54-55.]

At the end of the hearing, counsel told the ALJ that plaintiff was willing to withdraw his claim for disability benefits under Title II. [AR 56.]

On January 5, 2015, the ALJ issued a written opinion concluding that plaintiff did not qualify for disability benefits under Title II or supplemental security income benefits under Title XVI, because he was not disabled. [AR 10-22.] The ALJ's decision denies plaintiff's claim for benefits under Title II even though plaintiff indicated through counsel at the hearing before the ALJ that he was willing to withdraw his Title II claim. [AR 22, 56.] In reaching his decision, the ALJ afforded the testimony of the medical

/ / /

expert, Dr. Thompson, "great weight because it is consistent with the entirety of the record and the objective findings." [AR 18.]

On January 6, 2015, plaintiff requested review of the ALJ's decision by the Appeals Council. [AR 6.] However, on April 12, 2016, the Appeals Council denied plaintiff's request for review. [AR 1-3.]

Next, plaintiff filed his Complaint in this action on June 14, 2016. [Doc. No. 1.] Even though plaintiff indicated through counsel during the hearing before the ALJ that he was willing to withdraw his claim for disability benefits under Title II, the Complaint seeks judicial review of his claims for benefits under Title II and Title XVI. [Doc. No. 1, at pp. 1, 3.]

## II.    *Standards of Review – Final Decision of the Commissioner.*

The final decision of the Commissioner must be affirmed if it is supported by substantial evidence and if the Commissioner has applied the correct legal standards. *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record. *Id.* If there is evidence in the record to support more than one rational interpretation, the District Court must defer to the Commissioner's decision. *Id.* "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "In determining whether the Commissioner's findings are supported by substantial evidence, we must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Summary judgment motions, as defined by Fed.R.Civ.P. 56, contemplate the use of evidentiary

6

material in the form of affidavits, depositions, answers to interrogatories, and admissions. In Social Security appeals, however, the Court may 'look no further than the pleadings and the transcript of the record before the agency,' and may not admit additional evidence. *Morton v. Califano*, 481 F.Supp. 908, 914 n. 2 (E.D. Tenn.1978); 42 U.S.C. § 405(g). Therefore, although summary judgment motions are customarily used [in social security cases], and even requested by the Court or Magistrate, such motions merely serve as vehicles for briefing the parties' positions, and are not a prerequisite to the Court's reaching a decision on the merits." *Kenney v. Heckler*, 577 F.Supp. 214, 216 (N.D. Ohio 1983).

## ***Discussion***

### *I. The ALJ's Five-Step Disability Analysis.*

To qualify for disability benefits under the SSA, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C. § 423(d). The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d at 1193, 1194.

At step one, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Here, the ALJ concluded plaintiff has not engaged in "substantial gainful activity" since August 1, 2006, the onset date of his alleged disability. [AR 12.]

At step two, the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(ii). The Ninth Circuit has described the ALJ's step-two inquiry as "a *de minimis* screening device to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), quoting *Smolen v. Chater*, 80 F.3d at 1290. "An impairment or combination of impairments is not severe if it does not significantly limit

7

[the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). For example, a slight abnormality or combination of slight abnormalities that only have a minimal effect on the applicant's ability to perform basic work activities will not be considered a "severe" impairment. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Examples of basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b). "If the ALJ finds that the claimant lacks a medically severe impairment, the ALJ must find the claimant not to be disabled." *Webb v. Barnhart*, 433 F.3d at 686.

In this case, the ALJ concluded at step two that plaintiff has the following severe impairments: "degenerative disc disease, right leg cellulitis, status post-left wrist surgery, and affective disorder." [AR 12.] However, the ALJ noted that the right leg cellulitis was not a condition that has lasted or is expected to last twelve continuous months. [AR 13.]

If there is a severe impairment, the ALJ must then determine at step three whether it meets or equals one of the "Listing of Impairments" in the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she must be found disabled. *Id.* Here, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or equals the severity in the Listing of Impairments. [AR 13.]

At this step, the ALJ also considered whether plaintiff had a mental impairment that met the criteria in Listings 12.04, 12.06, and 12.09, as there was evidence in the medical records indicating plaintiff "had difficulty with controlling his mood, such as exhibiting anger and irritability;" had "poor insight;" "tangential thought process with a blunted affect;" and "below average intellect." [AR 14.] However, the ALJ found that plaintiff did not meet the "paragraph B" criteria of these Listings, because he did not have

8

marked restrictions in his activities of daily living, social functioning, or in maintaining concentration, persistence, or pace. [AR 13.] The ALJ further found that plaintiff did not meet the "paragraph C" criteria of these listings because he had not had repeated episodes of decompensation, had not been diagnosed with a residual disease process, and did not have a current history indicating a year or more of inability to function outside a highly supportive living arrangement. [AR 13-14.] At this stage of his analysis, the ALJ concluded that plaintiff only had mild restrictions in his daily living, mild difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. [AR 14.]

If an impairment does not meet or equal a Listing, the ALJ must make a step four determination of the claimant's residual functional capacity based on all impairments, including impairments that are not severe. 20 C.F.R. § 404.1520(e), § 404.1545(a)(2). "Residual functional capacity" is "the most [an applicant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(5)(i). If the applicant cannot perform past relevant work, the ALJ at step five must consider the residual functional capacity assessment, along with the applicant's age, education, and work experience, to determine whether the applicant could "make an adjustment to other work" that is available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); 42 U.S.C. § 1382c(a)(3)(B). While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

A residual functional capacity assessment considers a claimant's "ability to meet the physical, mental, sensory, and other requirements of work. . . ." 20 C.F.R. § 404.1545(a)(4). The physical demands of work activities are "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or

9

crouching). . . ." 20 C.F.R. § 404.1545(b). Mental activities considered in a residual functional capacity assessment include the abilities to understand, remember, carry out instructions, and respond appropriately to supervisors, co-workers, and pressures in a work setting. 20 C.F.R. § 404.1545(c). Other limiting factors, such as epilepsy, vision, hearing, and pain or other symptoms, may also be considered in a residual functional capacity assessment. 20 C.F.R. § 404.1545(d)&(e). After functional limitations or restrictions are assessed on a function-by-function basis, an individual's residual functional capacity is expressed in terms of exertional levels: "sedentary, light, medium, heavy, and very heavy." Soc. Sec. Ruling 96-8p (July 2, 1996).

Here, the ALJ concluded at step four that plaintiff is unable to perform any past relevant work. [AR 20.] However, the ALJ found that plaintiff has the residual functional capacity to perform work at the light exertional level with the following limitations:

- Sit for 2 hours at a time for a total of 6 hours in an 8-hour workday;
- Stand and walk for one hour at a time for a total of 4 hours in an 8-hour workday;
- Lift and carry 20 pounds occasionally and 10 pounds frequently;
- Occasionally climb stairs, ladders, scaffolds and ropes;
- Occasionally kneel and crouch;
- Never crawl;
- Frequently use the left upper extremity for gross manipulation;
- Occasionally push and pull and reach overhead with the left upper extremity;
- Avoid all exposure to unprotected heights and dangerous or fast moving machinery;
- Complete only simple routine tasks.

[AR 14.]

In assessing plaintiff's residual functional capacity, the ALJ concluded that his claims of "physical symptoms and limitations" were "not entirely credible." [AR 16.] The ALJ's reasons included a lack of objective clinical findings and observations; lack of

interference with activities of daily living; conservative treatment; drug seeking behavior; and medical opinion evidence from several physicians. [AR 16-21.] Plaintiff does not challenge any of the ALJ's findings through step four of the five-step disability analysis.

Since the ALJ concluded plaintiff is unable to perform his past relevant work, he considered at step five whether plaintiff is able to do other work in the national economy. To make this determination, the ALJ considered plaintiff's age, education, work experience, the residual functional capacity assessment, and the vocational expert's testimony. [AR 21.] According to the ALJ, the vocational expert testified that an individual of plaintiff's age, education, work experience, and residual functional capacity would be able to perform the requirements of two representative "light" occupations that are available in the national economy and listed in the Dictionary of Occupational Titles: (1) table worker (DOT No. 783.687-030); and (2) final assembler (DOT No. 789.687-046). [AR 21, citing AR 53-55.] Therefore, the ALJ found that plaintiff is not disabled under SSA regulations. [AR 21.]

## II. _The ALJ's Incomplete Hypotheticals to the Vocational Expert._

As noted above, the burden shifts to the ALJ at step five to establish that the claimant has the residual functional capacity to adjust to other work that exists in the national economy. The ALJ can satisfy this burden "by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record _**and reflecting all the claimant's limitations, both physical and mental, supported by the record**_." _Hill v. Astrue_, 698 F.3d 1153, 1161 (9th Cir. 2012) (emphasis added). "'If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" _Id._ at 1162, quoting _Matthews v. Shalala_, 10 F.3d 678, 681 (9th Cir. 1993). In other words, if the ALJ's hypothetical and the vocational expert's answer do not set forth all of the claimant's impairments, the vocational expert's testimony "'cannot constitute substantial evidence to support the

/ / /

16cv1479-WQH(KSC)

ALJ's findings.'" *Hill v. Astrue*, 698 F.3d at 1162, quoting *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Although plaintiff did not raise this issue in his Motion for Summary Judgment, the hearing transcript indicates that the ALJ presented incomplete hypotheticals to the vocational expert at the hearing. The ALJ's hypotheticals were incomplete, because they did not incorporate the standing and walking limitations listed in the ALJ's residual functional capacity assessment. The ALJ then relied on the vocational expert's responses to these incomplete hypotheticals to reach his step five determination that plaintiff has the capacity to do other "light" work. [AR 21, 53-55.] In this regard, the hearing transcript includes the following dialogue between the ALJ and the vocational expert:

> Q     [W]ould you please indicate for us the claimant's past work?
>
> A     Yes. I have a heavy equipment operator, DOT number 859.68-010. It's medium exertion level and skilled at an SVP of 6. Then I also have a construction laborer, DOT number 869.687-026. The exertional level is very heavy and it is unskilled at an SVP of 2.
>
> * * * *
>
> Q     I'm going to give you a couple of hypotheticals. Assume that we have someone who is younger at the alleged onset and the date last insured who is now closely approaching advanced age. This individual has at least a high school education, is literate, speaks English[,] and [has] the work experience as outlined by [the vocational expert]. ***Hypothetical number one, this person can sit two hours at a time for a total of six hours in an eight hour day. Sit one hour at a time for a total [of] four hours in an eight hour day.***[4] Can occasionally lift 20 pounds, frequently lift 10 pounds. Can

---

[4]     Here, there is either a transcription error or the ALJ mistakenly omitted the standing and walking limitations he included in his residual functional capacity assessment. As indicated above, the ALJ's residual functional capacity assessment states that plaintiff can only "stand and walk for one hour at a time for a total of 4 hours in an 8-hour workday." [AR 14.] These standing and walking limitations are also supported by substantial evidence in the record, because, as noted above, the medical expert testified

occasionally climb stairs, ladders, scaffolds, ropes. Occasionally kneel, crouch, never crawl. This person can frequently use the left upper extremity for gross manipulation. Can occasionally push and pull with the left upper extremity. Can occasionally reach overhead with the left upper extremity. Should not work at unprotected heights around dangerous or fast moving machinery. And is capable of doing only simple, routine tasks. Based on hypothetical number one would he be able to return to either of [his past relevant work]?

A    No, your honor.

Q    Would there be other light jobs that this person could do?

A    Yes.

Q    Examples?

A    I have a table worker, that's DOT number 783.687-030. It is a light exertional level and unskilled at an SVP of 1. National numbers are approximately 426,670. And I also have a final assembler, DOT number 789.687-046. Light exertional level and unskilled at an SVP of 2. National numbers are approximately 427,000.

Q    Okay. If you add to hypothetical number one that because of pain this person would be off task at least 20 percent of the day, would he be able to do the table worker job, or the final assembler job?

A    No, your honor.

Q    Would there be any jobs in the labor market?

A    No.

Q    Next hypothetical. Again, because of pain this person would miss three or more days per month from work, would that person be employable?

---

based on his review of the medical records that plaintiff could "stand[] and walk[] one hour at a time" for a total of four hours in an 8-hour day. [AR 34.]

1  A  No, you honor.[5]

2  [AR 53-54.]

3  Since the hearing transcript indicates that the hypotheticals presented to the

4  vocational expert did not include an individual who only has the ability to stand and walk

5  for one hour at a time for a total of 4 hours in an 8-hour workday, it is unclear whether

6  such an individual could do "other light jobs," such as "a table worker" and "a final

7  assembler." [AR 53.] In other words, the ALJ's hypotheticals and the vocational

8  expert's responses do not clearly take all of plaintiff's impairments into consideration.

9  Therefore, the vocational expert's testimony "'cannot constitute substantial evidence to

10  support the ALJ's findings.'" *Hill v. Astrue*, 698 F.3d at 1162, quoting *Gallant v.

11  Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). Accordingly, based on the current record,

12  it is this Court's view that substantial evidence does not support the ALJ's non-disability

13  determination at step five. [AR 21-22.]

14  ### III.  *Vocational Expert's Testimony vs. the Dictionary of Occupational Titles.*

15  Plaintiff argues in his Motion for Summary Judgment that his case should be

16  reversed and remanded for further proceedings, because the ALJ's step five

17  determination that he is able to do other "light" jobs relies on testimony by the vocational

18  expert that is inconsistent with a number of important sources of "controlling authority:"

19  (1) Social Security Ruling 96-8p;[6] (2) 20 C.F.R. § 404.1567; (3) Social Security Ruling

20  83-10; (4) the Dictionary of Occupational Titles; and (5) Social Security Ruling 00-4p,

21

22

23  [5]  For various reasons, the ALJ rejected plaintiff's claims of disabling pain, and

24  plaintiff does not challenge the ALJ's findings in this regard. [AR 16-21; Doc. No. 17-1, at pp. 3-10.]

25  [6]  Social Security regulations state as follows: "We publish Social Security Rulings

26  in the Federal Register under the authority of the Commissioner of Social Security. They are binding on all components of the Social Security Administration. These rulings

27  represent precedent final opinions and orders and statements of policy and interpretations

28  that we have adopted." 20 C.F.R. § 402.35(b)(1).

14

which was followed and affirmed by the Ninth Circuit in *Massachi v. Astrue*, 486 F.3d
1149 (9th Cir. 2007). [Doc. No. 17-1, at pp. 4-10.] According to plaintiff, these sources
indicate that jobs in the "light" category require a significant amount of standing and
walking, and this is inconsistent with the ALJ's residual functional capacity assessment,
which states that plaintiff can only "stand and walk for one hour at a time for a total of 4
hours in an 8-hour workday. . . ." [AR 14.]. As a result of this inconsistency, plaintiff
contends the ALJ had an affirmative duty to obtain additional occupational evidence from
the vocational expert to resolve the conflict. Specifically, plaintiff believes the ALJ
should have asked the vocational expert whether someone with plaintiff's standing and
walking limitations would still be able to work in the two representative occupations of
"table worker" and "final assembler." [AR 21, citing AR 53-55.] Because he failed to do
so, plaintiff contends the ALJ erroneously relied on the vocational expert's testimony to
reach his determination that plaintiff is not disabled.

     Plaintiff's argument assumes that the hypotheticals the ALJ presented to the
vocational expert included the standing and walking limitations from the ALJ's residual
functional capacity assessment. However, as outlined in the previous section, the hearing
transcript indicates the ALJ did not include the standing and walking limitations in his
hypotheticals. Even assuming for purposes of analysis that the ALJ did include the
standing and walking limitations in the hypotheticals presented to the vocational expert,
there would be a conflict between the vocational expert's testimony and the sources cited
by plaintiff.

     First, Social Security Ruling 96-8p states in part as follows:

     1.    Ordinarily, [residual functional capacity] is an assessment of an
individual's ability to do sustained work-related physical and mental
activities in a work setting on a regular and continuing basis. *A 'regular
and continuing basis' means 8 hours a day, for 5 days a week, or an
equivalent work schedule*.

                         * * * *

/ / /

16cv1479-WOH(KSC)

4. The [residual functional capacity] assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, . . . . Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

5. [Residual functional capacity] is not the least an individual can do despite his or her limitations or restrictions, but the most.

Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling 96-8P (S.S.A. July 2, 1996), available at 1996 WL 374185.

Second, 20 C.F.R. § 404.1567 states in part as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, ***a job is in this category when it requires a good deal of walking or standing***, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. ***To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time***.

20 C.F.R. § 404.1567(b) (emphasis added).

Similarly, Social Security Ruling 83-10 describes "light work" as follows:

The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, ***a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs***. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). ***Relatively few unskilled light jobs are performed in a seated position***.

/ / /

Titles II & XVI: Determining Capability to Do Other Work--The Med.-Vocational Rules of Appendix 2, Social Security Ruling 83-10 (S.S.A. 1983).

According to the Dictionary of Occupational Titles, the occupations of "table worker" (DOT No. 783.687-030) and "final assembler" (DOT No. 789.687-046) are categorized as "light" work, which is defined as follows:

> L - Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, ***a job should be rated Light Work: (1) when it requires walking or standing to a significant degree***; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DICTIONARY OF OCCUPATIONAL TITLES, Appendix C - Components of the Definition Trailer, http://www.occupationalinfo.org/appendxc_1.html#STRENGTH.

Social Security Ruling 00-4p, 2000 WL 1898704, "clarifies [the] standards for the use of vocational experts who provide evidence at hearings before administrative law judges. . . ." *Id.* at 1. Before relying on testimony by vocational experts, Ruling 00-4p requires ALJs to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] and information in the Dictionary of Occupational Titles (DOT)" and in other companion publications. *Id.* Ruling 00-4P specifically states as follows:

> In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy. We use these publications at steps 4 and 5 of the sequential evaluation process. . . .

///

Occupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the [vocational expert's] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Neither the DOT nor the [vocational expert] evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert's] testimony rather than on the DOT information.

Social Security Ruling 00-4p, 2000 WL 1898704, at p. 2.

In *Massachi v. Astrue*, 486 F.3d at 1149, the vocational expert testified that an individual with the claimant's limitations could perform entry-level work that was available in the local economy. *Id.* at 1151. The ALJ relied on this evidence at step five of the disability analysis to determine that the claimant was not disabled. However, the ALJ failed to ask whether the vocational expert's testimony conflicted with the DOT and, if so, whether there was a reasonable explanation for any such conflict. *Id.* at 1152-1154. The Ninth Circuit therefore reversed and remanded the case, because it was unclear whether the ALJ's disability determination was supported by substantial evidence. *Id.* at 1154. Citing Social Security Ruling 00-4p, the Ninth Circuit specifically held that an ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [DOT]." *Id.* at 1152. *See also Zavalin v. Colvin*, 778 F.3d 842, 846-848 (9th Cir. 2015) (concluding that the ALJ's error in failing to recognize and ask the vocational expert about an apparent conflict between the DOT and the expert's testimony was not harmless, because it was not possible to determine from the record whether the ALJ's disability finding was supported by substantial evidence).

16cv1479-WQH(KSC)

As noted above, the ALJ's residual functional capacity assessment clearly states that plaintiff "has the residual functional capacity to perform light work" but can only "stand and walk for one hour at a time for a total of 4 hours in an 8-hour workday." [AR 14.] Based on an incomplete hypothetical addressed to the vocational expert at the hearing, the ALJ concluded that plaintiff could do the two representative "light" jobs of "table worker" and "final assembler." [AR 21.] Without more, the ALJ's findings in this regard are inconsistent with the vocational expert's testimony and the sources cited by plaintiff indicating that jobs in the "light" occupational category typically require "walking and standing to a significant degree." DICTIONARY OF OCCUPATIONAL TITLES, Appendix C - Components of the Definition Trailer, http://www.occupationalinfo.org/appendxc_1.html#STRENGTH. See also 20 C.F.R. § 404.1567(b); Titles II & XVI: Determining Capability to Do Other Work--The Med.-Vocational Rules of Appendix 2, Social Security Ruling 83-10 (S.S.A. 1983). In conclusory form, the ALJ did state as follows in his decision: "Pursuant to 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information in the [DOT]." [AR 21.] However, this conclusory statement in the ALJ's decision is not enough to eliminate the inconsistencies.

Since the ALJ concluded based on the evidence that plaintiff had standing and walking limitations [AR 14, 18], he was required by Social Security Ruling 00-4p, 2000 WL 1898704, to further develop the record at the hearing. Social Security Ruling 00-4P specifically required the ALJ to obtain "a reasonable explanation" from the vocational expert for the conflict between the statements in the DOT and other sources indicating that "light" work typically requires "walking or standing to a significant degree" and the vocational expert's testimony that plaintiff could do the two representative "light" jobs of "table worker" and "final assembler." [AR 21.]

Specifically, the ALJ did not ask the vocational expert whether a person with plaintiff's standing and walking limitations would still be able to work in the representative "light" occupations of "table worker" and "final assembler" even though

the DOT indicates that "light" work typically includes "walking or standing to a significant degree." DICTIONARY OF OCCUPATIONAL TITLES, Appendix C - Components of the Definition Trailer, http://www.occupationalinfo.org/ appendxc_1.html#STRENGTH (emphasis added).  [AR 53-55.]  Nor did the ALJ ask the vocational expert to explain why such an individual could still do these jobs despite the standing and walking limitations.  [AR 53-55.]  As a result, the record is incomplete and inconsistent.  In sum, when viewed together, the ALJ's residual functional capacity assessment, the hypotheticals presented by the ALJ to the vocational expert at the hearing, and the vocational expert's testimony conflict with the DOT and other sources which indicate that "walking or standing to a significant degree" is typically required in "light" occupations.  DICTIONARY OF OCCUPATIONAL TITLES, Appendix C - Components of the Definition Trailer, http://www.occupationalinfo.org/ appendxc_1.html#STRENGTH. *See also* 20 C.F.R. § 404.1567(b); Titles II & XVI: Determining Capability to Do Other Work--The Med.-Vocational Rules of Appendix 2, Social Security Ruling 83-10 (S.S.A. 1983).  Therefore, based on the current record, it is this Court's view that substantial evidence does not support the ALJ's non-disability determination at step five of the five-step disability analysis.

## *IV.* *Remedy*.

"Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011).  Remand is also appropriate where the circumstances "show a substantial likelihood of prejudice." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011).

Based on the foregoing, it appears that further development of the Administrative Record could result in a more favorable outcome of plaintiff's claim for benefits under the SSA.  In this regard, additional testimony by a vocational expert could resolve the outstanding issue as to whether an individual with plaintiff's walking and standing

20

limitations could still perform the representative "light" occupations of "table worker" and "final assembler." [AR 53-55.] If so, the vocational expert could also provide a reasonable explanation for this conclusion. If the vocational expert is unable to do so, it appears plaintiff would be considered "disabled" under SSA regulations and would be entitled to benefits. As a result, it is RECOMMENDED that the District Court remand this matter for further development of the record, including additional testimony by a vocational expert.

## V. *Conclusion.*

Based on the foregoing, it is RECOMMENDED that the District Court: (1) GRANT plaintiff's Motion for Summary Judgment [Doc. No. 17]; (2) DENY defendant's Cross-Motion for Summary Judgment [Doc. No. 19]; (3) remand the case for further proceedings; and (4) enter judgment in plaintiff's favor.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d). Within fourteen (14) days after being served with a copy of this Report and Recommendation, "any party may serve and file written objections." 28 U.S.C. § 636(b)(1)(B)&(C). The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within this specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156–57 (9th Cir.1991).

IT IS SO ORDERED.

Dated: August 25, 2017

Hon. Karen S. Crawford
United States Magistrate Judge

16cv1479-WQH(KSC)